In re Keith R. LEIGH, Debtor.

**UNION NATIONAL BANK OF MARSEILLES, Plaintiff,**

v.

**Keith R. LEIGH, Defendant.**

**Bankruptcy No. 92 B 14444. Adv. No. 92 A 01300.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 1, 1993.

Memorandum Opinion on Motion to Alter or Vacate Judgment Jan. 31, 1994.

Douglas Drenk, Douglas Drenk & Associates, P.C., Wheaton, IL, for Union Nat. Bank of Marseilles, plaintiff.

Charles J. Myler, Linda M. Holzrichter, Myler, Ruddy & McTavish, Aurora, IL, for Keith R. Leigh, defendant.

### *MEMORANDUM OPINION*

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of debtor Keith R. Leigh, (the "Debtor") for summary judgment pursuant to Federal Rule of Civil Procedure 56, incorporated by reference in Federal Rule of Bankruptcy Procedure 7056, on the complaint of Union National Bank of Marseilles (the "Bank") to determine the dischargeability of a certain debt owed it by the Debtor and for relief under the Illinois Uniform Fraudulent Transfer Act. The Bank's action is based upon a debt which arose from a judgment entered by the Circuit Court of the 13th Judicial Circuit, Grundy County, Morris, Illinois, alleged here to be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). For the reasons set forth herein, the Court having considered the pleadings, exhibits, and affidavit, hereby grants the Debtor's motion for summary judgment. The Court fur-

ther holds that Count I of the instant complaint is not barred under the doctrine of collateral estoppel. Additionally, Count II of the complaint is not barred under the doctrine of res judicata. The Court also strikes the Bank's demand for trial by jury.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Count I of the complaint seeks the determination of dischargeability which constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I). Count II, which seeks to set aside certain transfers as fraudulent conveyances, invokes the Illinois Uniform Fraudulent Transfer Act, which is also a core proceeding under 28 U.S.C. § 157(b)(2)(H) to avoid and recover fraudulent conveyances. *See Bay State Milling Co. v. Martin*, 145 B.R. 933, 946 (Bankr.N.D.Ill.1992).

## II. *FACTS AND BACKGROUND*

The Debtor filed under Chapter 7 of the Bankruptcy Code on June 29, 1992. Thereafter, the Debtor received a discharge under 11 U.S.C. § 727 on December 10, 1992. Prior to the bankruptcy filing, on May 14, 1992, a judgment was entered in favor of the Bank and against the Debtor by the Circuit Court of the 13th Judicial Circuit, Grundy County, Illinois. The state court judgment arises from the granting of a summary judgment motion made there by the Bank against the Debtor as guarantor of a corporate note for Timekeeper Antiques, Inc. Summary judgment was entered only on Count II of a four-count complaint. Count II of the state court complaint sought judgment against the Debtor as maker of the note. Judgment was entered on Count II on May 14, 1992. Count I of the state court complaint sought judgment against the Debtor and his former wife, Carole A. Leigh, pursuant to the Family Expense Act, 750 ILCS 65/15. Count III of the state court complaint alleged a claim for relief against Carole A. Leigh and the Debtor pursuant to the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* Finally, Count IV sought to pierce the corporate veil and sought a constructive trust against Carole A. Leigh, the Debtor and the corporation. Counts I and III of the state court complaint were dismissed as moot by order dated June 4, 1991. In addition, paragraphs six and seven of Count IV of the state court complaint were also dismissed as moot that same date. Subsequently, the remainder of Count IV was voluntarily non-suited on May 14, 1992.

The Bank filed the instant two-count complaint on September 25, 1992, accompanied by a demand for a trial by jury. The Bank seeks to have a judgment debt in the sum of $285,518.17 owed it by the Debtor found non-dischargeable pursuant to sections 523(a)(2)(A) and 523(a)(6) in Count I of the complaint. Count II of this complaint is brought under the Illinois Uniform Fraudulent Transfer Act. The Bank requests that alleged transfers of assets to parties other than the Debtor be voided or attached to the extent necessary to satisfy the Bank's claim, and that the Debtor and other parties be enjoined from disposing of or transferring assets until the Bank's judgment is satisfied.

The following facts give rise to the instant dispute. The Debtor has been the sole director, officer, and shareholder of Timekeeper Antiques, Inc. since January 9, 1990. *See* Affidavit of Debtor, ¶ 8. Prior to that time, Carole A. Leigh was the corporate president and sole shareholder. *Id.* On March 31, 1989, the Debtor executed a promissory note in the amount of $205,400.00, on behalf of Timekeeper Antiques, Inc. and in favor of the Bank. Affidavit of Debtor, ¶¶ 9 and 10. The note represented the renewal of previous loans to Timekeeper Antiques, Inc., and by its terms, became due and payable on September 27, 1989. *Id.* The renewal of loans was solely for the use of and benefit of Timekeeper Antiques, Inc., although no express representations to this effect were ever made by the Debtor. Affidavit of Debtor, ¶ 11. The note was a renewal of certain loans made by Carole A. Leigh, the Debtor and Timekeeper Antiques, Inc. The gist of the complaint is that the Debtor utilized Timekeeper Antiques, Inc.'s funds, obtained from the Bank, as though they were his own personal funds. The Bank contends that the

Debtor and Carole A. Leigh took several steps to defraud the Bank. The Debtor has denied these allegations.

The Debtor filed an answer to the complaint on April 16, 1993, and subsequently amended same on August 6, 1993. In the amended answer, the Debtor sets forth several affirmative defenses. First, he claims that Counts I and II of this complaint were fully adjudicated in the state court action, and hence, the Bank should be collaterally estopped from raising those issues in this adversary proceeding. Next, the Debtor alleges that the complaint is barred under the doctrine of res judicata. Third, the Debtor asserts as an affirmative defense that the Bank has failed to state a claim upon which relief can be granted under section 523(a)(2)(A). The last affirmative defense set forth by the Debtor is that the discharge order, which was entered on December 10, 1992, bars the Bank from asserting the instant complaint against the Debtor. The Debtor filed the motion for summary judgment on August 6, 1993. The Debtor seeks to have the Bank's jury demand stricken.

The Bank, in its response to the motion for summary judgment, argues that there are material issues of fact and, that as a matter of law, the Debtor is not entitled to judgment. Further, the Bank states that the doctrines of collateral estoppel and res judicata do not bar this adversary proceeding. In addition, the Bank takes issue with the Debtor's arguments that the Bank has not stated a claim for which relief can be granted under section 523(a)(2)(A), and that it is not entitled to a trial by jury. Last, the Bank maintains that the discharge order did not discharge the Debtor's debt to the Bank.

## III. APPLICABLE STANDARDS

### A. Summary Judgment Standard

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); see also Donald v. Polk County, 836 F.2d 376, 378–379 (7th Cir.1988).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." Farries v. Stanadyne/Chicago Div., 832 F.2d 374, 378 (7th Cir.1987) quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n., 806 F.2d 146, 149 (7th Cir.1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514; Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; Matsushita, 475 U.S. at 585–586, 106 S.Ct. at 1355–1356. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249–250, 106 S.Ct. at 2511 (citations omitted); see also Valley Liquors, Inc. v. Renfield Importers, Ltd., 822 F.2d 656, 659 (7th Cir. 1987), cert. denied, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes dem-

onstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Patrick v. Jasper County,* 901 F.2d 561, 564–566 (7th Cir.1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See* 10A Charles Wright, Arthur Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2727, pp. 130–131 (1983).

 Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Karazanos v. Navistar International Transportation Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991); *Davis v. Chicago,* 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, Nat. Ass'n. v. Meat Counter, Inc.,* 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County,* 836 F.2d at 379; *Wallace v. Greer,* 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

Rule 12(m) of the General Rules of the United States District Court for the Northern District of Illinois, adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which it contends there is no genuine issue. The statement must include specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the summary judgment relief sought. Rule 12(n) also requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the opposing party's Rule 12(n) statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted. Application of Rule 12 is outcome determinative of this matter.

 In the present proceeding, the Debtor has filed the requisite Rule 12(m) statement. The Bank, however, has not filed its Rule 12(n) statement. That omission is fatal to the Bank on this dispositive motion for summary judgment. The Seventh Circuit has upheld strict application of Rule 12(n). *See Cooper v. Lane,* 969 F.2d 368, 372 n. 3 (7th Cir.1992); *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir.1992); *Appley v. West,* 929 F.2d 1176, 1179–1180 (7th Cir.1991); *Maksym v. Loesch,* 937 F.2d 1237, 1240–1241 (7th Cir.1991); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1102–1103 (7th Cir.1990); *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1500 (7th Cir.1990). Whether to enforce Rule 12(n) strictly or leniently is within the discretion of the Court. *Schulz,* 965 F.2d at 519; *Bell, Boyd & Lloyd,* 896 F.2d at 1103. Rule 12(n) requires that a party opposing a motion for summary judgment must state separately and with supporting documentation any disagreement with any factual assertions in the moving party's statement of facts "on pain of having the asserted facts deemed admitted." *Maksym,* 937 F.2d at 1240. This Court will enforce the application and effect of Rule 12. Thus, because the Bank failed to file its Rule 12(n) statement, the facts set

forth in the Debtor's Rule 12(m) statement are deemed admitted.

## B. *The Standard for Dischargeability in the Seventh Circuit*

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983). The United States Supreme Court has held that the burden of proof required for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286–287, 111 S.Ct. 654, 659–660, 112 L.Ed.2d 755 (1991). To further the policy of providing the debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985).

## IV. *DISCUSSION*

### A. *Dischargeability of Debts Arising from Fraudulent Conduct*

Section 523 of the Bankruptcy Code enumerates specific exceptions to the dischargeability of debts. The Bank contends that its judgment debt arises from fraudulent conduct of the Debtor, and as such is nondischargeable under section 523(a)(2)(A), which provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

In order to except fraud from dischargeability under section 523(a)(2)(A), the Bank must establish the following four elements: (1) the Debtor obtained money or credit renewed from the Bank through representations which he either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) the Debtor possessed scienter, i.e. an intent to deceive the Bank; (3) the Bank actually relied on the Debtor's misrepresentations resulting in loss; and (4) the Bank's reliance was reasonable. *See In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992), *citing In re Kimzey*, 761 F.2d 421, 423–424 (7th Cir. 1985); *Dornik v. Maurice*, 138 B.R. 890, 895 (Bankr.N.D.Ill.1992), *aff'd*, No. 92 C 4043, slip op., 1992 WL 308535 (N.D.Ill. Oct. 19, 1992); *In re Tapper*, 123 B.R. 594, 600 (Bankr.N.D.Ill.1991). The Seventh Circuit has held that an intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor. *Kimzey*, 761 F.2d at 424; *FTC v. Austin*, 138 B.R. 898, 914 (Bankr.N.D.Ill. 1992). The finding of fact as to the fraudulent intent of the debtor will [often] have to be established by circumstantial evidence in most cases as direct evidence of the defendant's state of mind at the time is seldom expressly indicated. *In re Guy*, 101 B.R. 961, 978 (Bankr.N.D.Ind.1988), *quoting In re Fenninger*, 49 B.R. 307, 310 (Bankr.E.D.Pa. 1985); *In re Taylor*, 49 B.R. 849, 851 (Bankr. E.D.Pa.1985) (citations omitted). Actual reliance may be proven by circumstantial evidence of reliance. *In re Kreps*, 700 F.2d 372, 376 (7th Cir.1983).

In the present case, the Debtor's unrebutted affidavit and his unanswered Rule 12(m) statement assert that the claim of the Bank against the Debtor in the sum of $285,518.17 did not result from an extension and/or renewal or refinancing of credit obtained by false representations or false pretenses. Additionally, the Debtor states that he never transferred assets to fraudulently hinder, delay or defraud the Bank or other creditors. Moreover, the Debtor maintains that he never fraudulently applied for a duplicate title certificate for the corporate vehicle, or that the dissolution action between him and Carole A. Leigh was commenced as part of a continuing scheme to defraud creditors or to facilitate a transfer of certain assets to the degradation of the Debtor's creditors. The Debtor's affidavit coupled with the required Rule 12(m) statement negates essential elements of the Bank's cause of action under section 523(a)(2)(A), namely

that the Debtor obtained money from the Bank through representations which he knew were false or made with reckless disregard, and that the Debtor possessed an intent to deceive the Bank. Because the Debtor's Rule 12(m) statement and affidavit negate these elements, the Court grants summary judgment as a matter of law for the Debtor on this theory of liability urged by the Bank.

## B. Debts Arising from Willful and Malicious Conduct

Additionally, the Bank alleges that its judgment debt arises from willful and malicious conduct by the Debtor, and as such is non-dischargeable pursuant to the specific exception found in section 523(a)(6), which provides:

> (a) A discharge ... under this title does not discharge an individual debtor from any debt—
>> (6) for willful and malicious injury caused by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6).

In order for a debt to be held non-dischargeable under section 523(a)(6), the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious. *Dornik v. Maurice*, 138 B.R. 890, 896 (Bankr.N.D.Ill.1992), *aff'd*, No. 92 C 4043, slip op., 1992 WL 308535 (N.D.Ill. Oct. 19, 1992), *quoting In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 768 (N.D.Ill.1983); *Taradash v. Pokorny*, 143 B.R. 179, 182 (Bankr.N.D.Ill.1992); *In re Dvorak*, 118 B.R. 619, 627 (Bankr.N.D.Ill. 1990); *In re Hopkins*, 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill will." *In re Condict*, 71 B.R. 485, 487 (N.D.Ill.1987); *In re Meyer*, 7 B.R. 932, 933 (Bankr.N.D.Ill.1981).

Courts have consistently used this definition of willful. *See e.g., In re Scarlata*, 979 F.2d 521, 527 (7th Cir.1992); *In re McGuffey*, 145 B.R. 582, 585–586 (Bankr. N.D.Ill.1992); *In re Iaquinta*, 98 B.R. 919, 924 (Bankr.N.D.Ill.1989). The Seventh Circuit has not yet defined the term "malicious" for purposes of section 523(a)(6). This Court, however, adheres to the liberal definition of "malicious" which includes implied or constructive malice as well as actual malice. *See McGuffey*, 145 B.R. at 585–587. The debtor need not act with ill will or malevolent purpose towards the injured party. *In re Hallahan*, 78 B.R. 547, 550 (Bankr.C.D.Ill. 1987), *aff'd*, 113 B.R. 975 (C.D.Ill.1990), *aff'd*, 936 F.2d 1496 (7th Cir.1991). Thus, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury. Moreover, the Seventh Circuit has stated that to except a debt from discharge under section 523(a)(6), the creditor must show that the debtor knew his acts would automatically or necessarily cause the creditor's injury. *Scarlata*, 979 F.2d at 526.

The phrase "willful and malicious injury" encompasses "willful and malicious conversion." *In re Meyer*, 7 B.R. 932, 933 (Bankr.N.D.Ill.1981). Implied or constructive malice will be found if the debtor injures the creditor by an intentional or deliberate act, or the debtor commits this act knowing it will harm the creditor's interest in property. *See In re Cerar*, 97 B.R. 447, 452 (C.D.Ill. 1989). The unauthorized use of money constitutes conversion because it was an unauthorized act which deprives the owner of the use of the property. *Dornik*, 138 B.R. at 896, *citing* 35 Illinois Law and Practice, *Trover and Conversion*, §§ 2, 3 and 7 (1958 and 1991 Supp.). Business persons are presumed to know that harm will result from conversion of a party's property, and a debtor who actively participates in such a conversion is personally liable. *In re Nicoll*, 42 B.R. 87, 90 (Bankr.N.D.Ill.1984). The fair market value of the converted collateral is the appropriate measure of damages for conversion. *Iaquinta*, 98 B.R. at 925; *In re Krause*, 44 B.R. 159, 163 (Bankr.N.D.Ill.1984).

The Debtor's unrebutted affidavit and his Rule 12(m) statement assert that the claim of the Bank against the Debtor in the sum of $285,518.17 did not result from willful, wanton, malicious, intentional or deliberate injury by the Debtor to the Bank's property.

Further, the Debtor denies that he expended any amount of the funds procured by the note for his own personal benefit. He states that all funds were used for corporate purposes and all expenditures were made through the corporate checking account at the Bank. These uncontroverted statements and affidavit negate essential elements the Bank is required to prove under section 523(a)(6), its second theory of non-dischargeability. Hence, the Debtor is entitled to summary judgment on Count I as a matter of law.

### C. *The Doctrine of Collateral Estoppel*

■ If properly applicable, the doctrine of collateral estoppel will preclude the Debtor from re-litigating the facts determined by the state court. If the facts determined by the state court satisfy the standards for excepting a debt from discharge under sections 523(a)(2)(A) and 523(a)(6), the Bank's judgment debt is properly held non-dischargeable. Under the doctrine of collateral estoppel, once a court has decided an issue necessary to its judgment, that decision may preclude re-litigation of the same issue in a suit on a different cause of action involving a party to the first case. In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the Supreme Court held and reaffirmed that the doctrine of collateral estoppel is applicable in bankruptcy cases determining the dischargeability of a debt. *See also Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■ The parties have raised the interesting issue of which standard for collateral estoppel should apply in this matter: federal or state. The choice of law issue only arises when there is a prior state court judgment and the federal court must determine the preclusive effect of that judgment. The issue does not arise when the prior judgment was obtained in a federal court. *See In re Wien*, 155 B.R. 479 (Bankr.N.D.Ill.1993) (prior federal district court judgment and bankruptcy court had to determine the preclusive effect of that judgment). The full faith and credit statute embodied in 28 U.S.C. § 1738 provides:

the ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such state.

28 U.S.C. § 1738. Hence, pursuant to this statute, a state court judgment commands the same preclusive effects in federal court that it would have in the court that entered it. *Bicknell v. Stanley*, 118 B.R. 652, 658 (S.D.Ind.1990). Although the federal and state standards for preclusion will often be the same, the full faith and credit statute mandates that a federal court presented with a prior state court judgment must first look to the state's rules of preclusion. *Id.* at 663.

The Supreme Court has held that the full faith and credit statute must be followed. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). These Supreme Court decisions hold that the starting point in any discussion of the preclusive effect of a state court judgment must be, by virtue of section 1738, the preclusion law of the state. *See Bicknell*, 118 B.R. at 660 (contains detailed discussion of these Supreme Court cases). The Supreme Court has stated that "§ 1738 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment." *Marrese*, 470 U.S. at 381, 105 S.Ct. at 1332. This step is necessary because "[r]eference to state preclusion law may make it unnecessary to determine if the federal court, as an exception to § 1738, should refuse to give preclusive effect to a state court judgment." *Id.* at 383, 105 S.Ct. at 1333. "The issue whether there is an exception to § 1738 arises only if state law indicates that litigation of a particular claim or issue should be barred in the subsequent federal proceeding." *Id.*

The general rules of proper application of section 1738, however, seem to have been ignored by some federal courts in bankruptcy cases. Several courts have discussed this problem in great detail. *See Bicknell*, 118

B.R. 652; *In re Heuser,* 127 B.R. 895 (Bankr. N.D.Fla.1991); *In re Wagner,* 79 B.R. 1016 (Bankr.W.D.Wis.1987); *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn.1985). Such extended discussions need not be repeated here. The Seventh Circuit's decision in *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987) illustrates this point. *Klingman,* a bankruptcy appeal, involved a prior state court judgment that had been given preclusive effect in a dischargeability determination. Without citing to section 1738 or otherwise explaining its choice of a standard, the *Klingman* court merely applied the federal standard on the collateral estoppel issue. A myriad of cases which were decided after *Klingman* have also applied the federal standard of issue preclusion without discussion of section 1738. *See Bicknell,* 118 B.R. at 661 (citations contained therein).

■ Because the parties have raised the issue, the Court respectfully declines to apply *Klingman*'s summary consideration of federal standards for application of collateral estoppel. *Klingman* made no mention of section 1738, and did not discuss this issue of which standard applies. This Court is obliged to discuss and decide this issue because the parties have raised same. After review of the above-authorities, the Court holds that under section 1738 and the above-referenced Supreme Court cases it should apply the state collateral estoppel standard of Illinois, the state in which the state court judgment was entered. Logically, the same state standard should be chosen for application of the related but broader doctrine of res judicata or claim preclusion.

■ In Illinois, collateral estoppel is "limited to the precise factual or legal issues actually litigated and decided when a prior order was entered." *Henry v. Ryan,* 775 F.Supp. 247, 252 (N.D.Ill.1991), *quoting People v. Williams,* 138 Ill.2d 377, 393, 150 Ill. Dec. 498, 505, 563 N.E.2d 385, 392 (1990). Collateral estoppel is also limited to particular facts and issues in common between the prior and subsequent actions which are material to the dispositions of both. *Cirro Wrecking Co. v. Roppolo,* 153 Ill.2d 6, 20, 178 Ill.Dec. 750, 758, 605 N.E.2d 544, 552 (1992); *McCulla v. Industrial Com.,* 232 Ill.App.3d

517, 520, 173 Ill.Dec. 901, 903–904, 597 N.E.2d 875, 877–878 (1st Dist.1992). In Illinois, the elements of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) the party against whom estoppel is asserted was a party or in privity with a party to the prior litigation; (3) there has been a final judgment on the merits in the former suit; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Henry v. Ryan,* 775 F.Supp. at 252; *Sampson v. Cape Industries, Ltd.,* 229 Ill.App.3d 943, 948–949, 171 Ill.Dec. 338, 341, 593 N.E.2d 1158, 1161 (4th Dist. 1992). In applying the doctrine of collateral estoppel, courts are obliged to look at the record with "realism and rationality" in order to determine which factual questions have been decided. *People v. Ward,* 72 Ill.2d 379, 384, 21 Ill.Dec. 178, 181, 381 N.E.2d 256, 259 (1978); *People v. Shlensky,* 118 Ill.App.3d 243, 246, 73 Ill.Dec. 854, 857, 454 N.E.2d 1103, 1106 (1st Dist.1983).

■ Collateral estoppel bars subsequent actions only as to the matter actually litigated and determined in the prior suit, and not as to other matters which might have been litigated and determined. *Housing Authority for LaSalle County v. YMCA of Ottawa,* 101 Ill.2d 246, 252, 78 Ill.Dec. 125, 128, 461 N.E.2d 959, 962 (1984); *Benton v. Smith,* 157 Ill.App.3d 847, 853, 109 Ill.Dec. 884, 888, 510 N.E.2d 952, 956 (1st Dist.1987). The party asserting collateral estoppel bears the burden of showing with clarity and certainty what was determined by the prior judgment. *Benton,* 157 Ill.App.3d at 853, 109 Ill.Dec. at 888, 510 N.E.2d at 956. This is a heavy burden of proof. *Id.* An order is considered final if it terminates the litigation between the parties and finally determines, fixes, and disposes of their rights as to the issue made by the suit. *Gilbert v. Braniff International Corp.,* 579 F.2d 411, 413 (7th Cir.1978). Furthermore, finality requires that the potential for appellate review has been exhausted. *Ballweg v. Springfield,* 114 Ill.2d 107, 112, 102 Ill.Dec. 360, 362, 499 N.E.2d 1373, 1375 (1986).

**218**

In the Seventh Circuit, collateral estoppel can be applied by federal courts to cases in which a prior court hearing a non-bankruptcy case has determined factual issues relevant to a complaint to determine the dischargeability of a debt, provided that the non-bankruptcy court used the same standards that a bankruptcy court would have used in determining the issues which are subsequently given collateral estoppel effect. *Klingman*, 831 F.2d at 1294; *see e.g., McGuffey*, 145 B.R. at 587. Although Congress has vested jurisdiction to determine the dischargeability of debt in the bankruptcy court, it does not mean that every last fact issue bearing on dischargeability must be re-litigated, re-tried, and again decided when there has been a prior determination of the same facts by a court of competent jurisdiction. *Snydergeneral Corp. v. Gibson*, 149 B.R. 562, 572 n. 5 (Bankr.D.Minn.1993); *In re Powell*, 95 B.R. 236, 238 (Bankr.S.D.Fla. 1989), *aff'd*, 108 B.R. 343 (S.D.Fla.1989); *In re Coover*, 70 B.R. 554 (Bankr.S.D.Fla.1987). Courts apply the doctrine of collateral estoppel to promote judicial economy by encouraging parties to present their best arguments. *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981). The party using offensive collateral estoppel bears the burden of proving that the elements of issue preclusion have been met. *Evans v. Dunston*, 146 B.R. 269, 277 (D.Colo.1992) (citations omitted).

The Debtor maintains that the state court action operates as collateral estoppel to preclude the Bank from re-litigating the matters determined in the earlier proceeding. The Bank maintains that the state court summary judgment on Count II of that complaint should not operate as collateral estoppel because the matters determined were not actually litigated.

The Bank has the burden of establishing that the debt owed by the Debtor arose from willful and malicious conduct under section 523(a)(6) and/or was the result of fraudulent misrepresentations under section 523(a)(2)(A). The "actually litigated" element indicates that concern for judicial economy is tempered by need for some assurance that resolution of issues in the first proceeding is reliable. *In re Dvorak*, 118 B.R. 619,

624–625 (Bankr.N.D.Ill.1990). To satisfy the actually litigated requirement, a full trial is not necessitated. However, a party must have a full and fair opportunity to present its case. *Dunston*, 146 B.R. at 277. There is a split of authority as to whether uncontested summary judgments can satisfy the actually litigated requirement. *Katahn Assoc., Inc. v. Wien*, 155 B.R. 479, 485 (Bankr.N.D.Ill. 1993) (see for a discussion of both lines of authority). A line of cases reads the actually litigated requirement narrowly, denying collateral estoppel effect to default judgments, consent judgments, and uncontested summary judgments in all but a few cases. *Id., citing* 1B James W. Moore, *Moore's Federal Practice* ¶ 10.444 (2d ed. 1992); *Grip–Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir.1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983); *In re McMillan*, 579 F.2d 289, 293 (3d Cir. 1978); *In re Stiles*, 118 B.R. 81, 85–86 (Bankr.W.D.Tenn.1990). Another line of cases reads the actually litigated requirement in a less restrictive manner, providing that collateral estoppel may be applied to some default, consent, and uncontested summary judgments. *Wien*, 155 B.R. at 485; *see Stoll v. Conway*, 148 B.R. 881 (Bankr. E.D.Wis.1992). This Court has adopted the second line of cases holding that the application of collateral estoppel to uncontested summary judgments must be made on a case by case basis. *Wien*, 155 B.R. at 486.

A summary judgment entered by a court with sufficient findings of fact can be given collateral estoppel effect in a proceeding to determine the dischargeability of a debt. *In re Herwig*, 77 B.R. 662, 664 (Bankr. S.D.Ill.1987); *see also Wien*, 155 B.R. at 486 (uncontested summary judgment replete with extensive findings of fact and conclusions of law can satisfy the actually litigated and essentially decided requirements). Detailed findings of fact from the earlier proceeding are necessary to enable the bankruptcy court to determine which issues were actually litigated in the earlier proceeding. When a default judgment has been entered, as in the case at bar, the record rarely reflects findings of facts sufficient to meet the requirement that the issue to be precluded has been

actually and necessarily litigated. *In re Rudd,* 104 B.R. 8, 21 (Bankr.N.D.Ind.1987). In the present case, the Court has not been provided with any transcripts from the state court proceeding. If the state court judge has entered detailed findings of fact, they have not been provided to this Court. The judgment on Count II of the state court complaint simply declares judgment in favor of the Bank and awards a monetary amount.

　　■■■■ When a bankruptcy court is deciding whether collateral estoppel applies to an earlier proceeding, a clear and substantial record from the earlier proceeding is also needed to enable the bankruptcy court to determine which matters were essential to the court's decision in the earlier proceeding. A bankruptcy court can deny preclusive effect to a judgment if the findings were "conclusory" or if the record, pleadings, and affidavits do not enable the bankruptcy court to discern the basis of the facts and determine what was essential to the award of judgment. *In re Shuler,* 722 F.2d 1253, 1257–1258 (5th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). In *Shuler,* the only proof the creditor submitted to establish a debt's non-dischargeability were portions of the state court proceedings. *Id.* at 1257. The state court, in granting default judgment, stated simply that the creditor was entitled to judgment upon its cause of action based upon a "debt for obtaining by false pretenses the items furnished by [the creditor]." *Id.* at 1254. The court held that there were insufficient facts furnished from the state court proceeding to which the bankruptcy court could apply the federal bankruptcy standards for determining the dischargeability of debt. *Id.* at 1258.

When a complaint upon which summary judgment has been granted contains many counts, and the judgment entered lacks detail, it is impossible for a subsequent court to determine which matters were essential to the earlier decision. *See In re Wien,* No. 92 B. 19154, 1993 WL 266897 at *7 (Bankr. N.D.Ill. June 30, 1993). The Court has only received the following portions of the state court record to assist with its review of the Debtor's motion for summary judgment: (1) the amended complaint; (2) the state court

orders dated June 4, 1991 and May 14, 1992; (3) the docket of the state court action; and (4) an affidavit of the Debtor in support of the instant motion. Thus, in the present case, it is impossible to determine which factual allegations contained in the documents listed above were essential to the state court's decision.

　　■■■■ The Debtor argues that because Counts I, III, and IV of the earlier action were involuntary dismissed and non-suited, same constitutes adjudication on the merits in favor of the Debtor and as such, collaterally estops the Bank from re-litigating Count I. A debtor is not collaterally estopped from litigating whether a judgment is non-dischargeable as debt resulting from willful and malicious injury where the record showing an entry of judgment does not indicate that the issue of malice was actually and necessarily decided. *In re Martinez,* 110 B.R. 353, 355–356 (Bankr.N.D.Ill.1990). Given the state court orders provided here, which do not contain any detailed findings of fact or conclusions of law, the Court is unable to ascertain whether the issue of malice was actually and necessarily decided in the earlier action in order to determine dischargeability under section 523(a)(6). The state court order of May 14, 1992, simply awards judgment in favor of the Bank and against the Debtor on his guaranty of the note in the sum of $285,-518.17. No specific findings of fact were provided to show that the Debtor converted to his personal use the funds intended for the corporation. Consequently, the Court cannot reasonably infer that the Debtor knew that the Bank would be injured by the alleged, but as of yet unproven, misappropriation and conversion. The Court has insufficient facts found in the state court proceeding to which it could apply the federal bankruptcy standards for determining the dischargeability of debt.

Moreover, the Court is unable to determine whether the issue of fraud was actually and necessarily decided for purposes of section 523(a)(2)(A). It is wholly unclear whether the state court used the same standards the bankruptcy court would use in determining the dischargeability of the judgment debt. Hence, but for the granting of the

Debtor's motion for summary judgment, the doctrine of collateral estoppel would not bar the Bank from proceeding on Count I of the complaint.

### D. *The Doctrine of Res Judicata*

The Debtor argues that Count II of the instant complaint, which is brought under the Illinois Uniform Fraudulent Transfer Act, is barred pursuant to the doctrine of res judicata. In *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the United States Supreme Court found that, "the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceeding when considering the dischargeability of respondent's debt." *Id.* at 138–139, 99 S.Ct. at 2213. The rationale behind the decision was based on the intent of Congress that the bankruptcy court resolve dischargeability issues, and limiting the application of res judicata would enable the bankruptcy court to weigh all the evidence and make a determination. *Brown*, however, does not preclude the application of the doctrine of res judicata all together. *See In re Goodman*, 25 B.R. 932, 938–939 (Bankr. N.D.Ill.1982).[1]

▮▮▮ Federal courts are required to give state court judgments the same preclusive effect that those judgments would be given in the courts of the state from which they emerge if: (1) under the law of the forum state the claim would be bared by the doctrine of res judicata; and (2) the party against whom the earlier decision is asserted as a bar had a full and fair opportunity to litigate the claim or issue. *See Marrese*, 470 U.S. at 380, 105 S.Ct. at 1331; *Pirela v. North Aurora*, 935 F.2d 909, 911 (7th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991); *Welch v. Johnson*, 907 F.2d 714, 719 (7th Cir.1990); 28 U.S.C. § 1738 (federal courts are required to give state court judgments "the same full faith and credit ... as they have by law or usage in the courts of such state"). The second requirement is met if the prior state proceeding met the minimum procedural due process requirements of the fourteenth amendment. *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897; *Welch*, 907 F.2d at 719.

▮▮▮ To properly apply res judicata under Illinois law, a decision must involve "(1) identity of parties or their privies in the two suits; (2) identity of causes of action in the prior and current suit; and (3) a final judgment on the merits in the prior suit." *Lolling v. Patterson*, 966 F.2d 230, 235 (7th Cir.1992), *quoting Schlangen v. Resolution Trust Corp.*, 934 F.2d 143, 145–146 (7th Cir. 1991); *accord People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill.2d 285, 294, 176 Ill.Dec. 874, 879, 602 N.E.2d 820, 825 (1992); *County of Wabash v. Partee*, 241 Ill.App.3d 59, 64, 181 Ill.Dec. 601, 605, 608 N.E.2d 674, 678 (5th Dist.1993). The party seeking preclusion has the burden to show what was determined by the prior judgment. *Welch*, 907 F.2d at 720; *Joseph T. Ryerson & Son, Inc. v. Manulife Real Estate Co.*, 238 Ill.App.3d 550, 553, 179 Ill.Dec. 631, 633, 606 N.E.2d 463, 465 (1st Dist.1992).

▮▮▮ It is undisputed that the Debtor and the Bank were both named parties in the state court action and are named parties in the instant adversary proceeding. Hence, the first element of res judicata has been met. The Illinois courts have set forth two tests for determining whether causes of action are the same for res judicata purposes: the "same evidence" test and the "transactional" test. *Rockford Mut. Ins. Co. v. Amerisure Ins. Co.*, 925 F.2d 193, 195 (7th Cir. 1991); *Rodgers v. St. Mary's Hospital*, 149 Ill.2d 302, 312, 173 Ill.Dec. 642, 647, 597 N.E.2d 616, 621 (1992). Under the "same evidence" test, res judicata bars the second suit if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions. *Rodgers*, 149 Ill.2d at 312, 173 Ill.Dec. at 647, 597 N.E.2d at 621, *citing Pfeiffer v. William Wrigley Jr. Co.*, 139 Ill. App.3d 320, 322, 92 Ill.Dec. 332, 334, 484 N.E.2d 1187, 1189 (1st Dist.1985). The second approach, the "transactional" test, considers whether both suits arise from the same transaction, incident or factual situa-

---

1. The Debtor acknowledges that under *Brown*, res judicata does not apply to Count I of the complaint because the Bank seeks to determine the dischargeability of a debt.

tion. This test provides that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id. quoting Pfeiffer*, 139 Ill.App.3d at 323, 92 Ill.Dec. at 334–335, 484 N.E.2d at 1189–1190.

Clearly, the state court action and this adversary proceeding satisfy both the "same evidence" test and the "transactional" test. Both suits are premised on the note of March 31, 1989, and the Debtor's personal guaranty of the note; the Debtor's alleged liability for the note; the alleged fraudulent transfers of assets by the Debtor and others; and the Debtor's intent regarding those alleged transfers. Both suits arise from the same transaction involving the renewal of the corporate note. Therefore, the second element of res judicata has been met.

Thus, the last element remaining is whether there was a final judgment on the merits in the earlier action. Count II of this complaint is based upon the Illinois Uniform Fraudulent Transfer Act. Count III of the earlier action, which was based upon the same statute, was involuntarily dismissed on June 4, 1991 as moot. Illinois Supreme Court Rule 273 states as follows:

> Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an *action*, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits.

ILCS S.Ct. Rule 273 (emphasis added). The Committee Comments to the Rule state that it is based upon Federal Rule of Civil Procedure 41(b) and deals with the question of the effect of an involuntary dismissal. Several cases have held that an involuntary dismissal, not falling under any of the exceptions enumerated in Rule 273, constitutes an adjudication on the merits for res judicata purposes. *See Kraus v. Metropolitan Two Illinois Center*, 146 Ill.App.3d 210, 212, 100 Ill.Dec. 15, 17, 496 N.E.2d 1080, 1082 (1st Dist.1986); *Patzner v. Baise*, 144 Ill.App.3d 42, 44, 98 Ill.Dec. 251, 252, 494 N.E.2d 178, 179 (2d Dist.1986); *Local 336 International Brotherhood of Electrical Workers v. Angelacos*, 144

Ill.App.3d 1060, 1064–1065, 99 Ill.Dec. 179, 182, 495 N.E.2d 626, 629 (2d Dist.1986); *cf. Agfa–Gevaert, A.G. v. A.B. Dick Co.*, 770 F.Supp. 441 (N.D.Ill.1991) (Rule 41(b) involuntary dismissals are considered adjudications on the merits for res judicata purposes); *McDonald's Corp. v. Levine*, 108 Ill. App.3d 732, 749, 64 Ill.Dec. 224, 236, 439 N.E.2d 475, 487 (2d Dist.1982) (an interlocutory order dismissing certain counts of a counterclaim is a final determination of the issues presented and is entitled to res judicata effect).

Supreme Court Rule 273 applies only where there has been a dismissal of an "action." In *Stutzke v. Edwards*, 58 Ill.App.3d 832, 16 Ill.Dec. 296, 374 N.E.2d 1071 (2d Dist.1978), the court held that the dismissal of two counts of a complaint, not of the whole complaint, and thus not of the "action," rendered Rule 273 inapplicable. *Cf. Gilbert v. Braniff International Corp.*, 579 F.2d 411, 413 (7th Cir.1978) (order of dismissal with leave to amend the complaint comes within the "otherwise specifies" exception to Rule 273, thus rendering the order not a final order by operation of that Rule).

Prior to the adoption of Supreme Court Rule 273, dismissal on the grounds of mootness was not necessarily considered a judgment on the merits, and thus was not given res judicata effect. *See Interstate Bakeries Corp. v. Bakery, Cracker, Pie & Yeast Wagon Drivers Union*, 58 Ill.App.2d 485, 490, 208 N.E.2d 397, 399 (1st Dist.1965); *cf. Commodity Futures Trading Com. v. Board of Trade*, 701 F.2d 653 (7th Cir.1983) (a dismissal for mootness is a dismissal for lack of jurisdiction and will have no preclusive effect). Supreme Court Rule 273, however, provides that an involuntary dismissal, except for one or more of the enumerated exceptions, constitutes an adjudication on the merits for purposes of res judicata. Therefore, the Bank's reliance on *Interstate Bakeries* is misplaced because that case was decided prior to the adoption of Supreme Court Rule 273 which became effective on January 1, 1967.

Turning to the matter at bar, only Count III of the state court complaint was dismissed as moot on June 4, 1991. The entire state court "action" was not involuntarily dis-

missed. Hence, under *Stutzke*, Rule 273 is inapplicable because there was merely a dismissal of one count of the complaint, not of the whole complaint and not of the "action" as required under Rule 273. The Debtor relies upon *Kraus* and *Patzner* which are inapposite because both of those cases involved the dismissal of the entire complaint, not just certain counts thereof. Accordingly, the last element of res judicata, a final judgment on the merits of the entire state court action, has not been satisfied. Therefore, res judicata would not apply to bar Count II of this complaint, had the Bank prevailed on the motion for summary judgment.

### E. *Whether Count II of the Complaint Should Be Barred Under the Doctrine of Merger*

█ The Debtor also contends that under the doctrine of merger, Count II of the instant complaint is barred. The Debtor argues that the state court adjudicated the issues contained in Count II of the state court complaint. That cause of action on the note the Debtor signed as maker, the Debtor maintains, is now merged into the state court judgment. The Debtor cites to several state court decisions in support of this argument. The Court, however, finds that Count II of the complaint filed here under the Illinois Uniform Fraudulent Transfer Act is not barred pursuant to the doctrine of merger. The fact that for state law purposes any and all causes of action on the note and guaranty are merged into the judgment does not serve as a defense to a fraudulent transfer avoidance action in a federal bankruptcy court. None of the cases cited by the Debtor pertain to such determinations in bankruptcy, and thus are inapposite and not controlling. Moreover, the state court judgment order dated June 4, 1991, merely dismissed Count II of the state court action as moot, not because it applied the *doctrine of merger* which this Court likewise declines to apply.

### F. *Whether the Discharge Order Bars the Complaint*

█ The Debtor's next argument that the discharge order dated December 10, 1992,

bars the instant complaint is without merit. First, the discharge order provides in relevant part:

> Any judgment ... obtained in any court other than this court is null and void ... with respect to any of the following:
>
> . . . . .
>
> (b) unless heretofore or *hereafter determined* by order of this court *to be non-dischargeable*, debts alleged to be excepted from discharge under clauses *(2)*, (4) and *(6)* of 11 U.S.C. sec. *523(a)* ....

*See* Exhibit E to Motion for Summary Judgment (emphasis added). The discharge order specifically contemplates the possibility of a determination by the Court, after the date of discharge, that certain debts may be non-dischargeable under sections 523(a)(2), 523(a)(4), or 523(a)(6). Because the complaint seeks to hold the judgment debt non-dischargeable under sections 523(a)(2)(A) and 523(a)(6), the discharge order did not bar the Bank's relief sought. Moreover, the complaint at bar was timely filed.[2] The fact that the Debtor received a discharge prior to the final determination of the instant dischargeability of the judgment debt, does not effectively bar either Count I or II of this complaint. Consequently, the Debtor's argument on this point is rejected.

### G. *Whether the Bank Failed to State a Claim Upon Which Relief Can Be Granted Under 11 U.S.C. § 523(a)(2)(A)*

█ The Debtor contends that the Bank has failed to state a claim upon which relief can be granted under section 523(a)(2)(A). Although not specifically referenced by the Debtor, motions to dismiss for failure to state a claim upon which relief can be granted are generally brought under Federal Rule of Civil Procedure 12(b)(6). Notice pleadings filed under Rule 8 of the Federal Rules of Civil Procedure should be liberally construed. *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 653 (7th Cir.1984). Rule 8 applies in adver-

---

2. Pursuant to Federal Rule of Bankruptcy Procedure 4007(c), the deadline for filing dischargeability complaints was October 13, 1992. The instant complaint was filed on September 25, 1992.

sary proceedings filed as related matters under the Bankruptcy Code pursuant to Federal Rule of Bankruptcy Procedure 7008. "A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents. Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992).

In order for the Debtor to prevail on the motion to dismiss under Rule 12 and its bankruptcy analogue Rule 7012, it must clearly appear from the pleadings that the Bank can prove no set of facts in support of its claims which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Meriwether v. Faulkner*, 821 F.2d 408, 411 (7th Cir. 1987), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987); *Doe v. St. Joseph's Hospital*, 788 F.2d 411, 414 (7th Cir. 1986); *Swanson v. Wabash, Inc.*, 577 F.Supp. 1308, 1312 (N.D.Ill.1983). The Seventh Circuit has emphasized that "[d]espite their liberality on pleading matters ... the federal rules still require that a complaint allege facts that, if proven, would provide an adequate basis for each claim." *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir.1988). It is well established that alleging mere legal conclusions, without a factual predicate, is inadequate to state a claim for relief. *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Moreover, the Court must take as true all well pleaded material facts in the complaint, and must view these facts and all reasonable inferences which may be drawn from them in a light most favorable to the Bank. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Infinity Broadcasting Corp. v. Prudential Ins. Co.*, 869 F.2d 1073, 1075 (7th Cir.1989); *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611 (7th Cir.1989); *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987); *Meriwether*, 821 F.2d at 410; *Ellsworth v. Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). The issue is not whether the Bank will ultimately prevail, but whether it has pleaded a cause of action sufficient to entitle it to offer evidence in support of its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

When a defendant is charged with fraudulent activity, however, the plaintiff must state with particularity the circumstances constituting the fraud. Fed.R.Civ.P. 9(b) [3]; *Veal v. First American Sav. Bank*, 914 F.2d 909, 913 (7th Cir.1990). The plaintiff must identify particular statements and actions and specify why they are fraudulent. *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987). Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal. *Veal*, 914 F.2d at 913, *citing Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985). With respect to a claim involving fraud, the plaintiff must state with particularity the circumstances constituting fraud in order to ensure that the defendant may be able to respond adequately to the complaint as well as to protect that defendant from unjustified injury to reputation. *In re Aluminum Mills Corp.*, 132 B.R. 869, 882 (Bankr.N.D.Ill.1991), *citing Tomera v. Galt*, 511 F.2d 504 (7th Cir.1975). Courts must read Rule 9(b), however, in conjunction with Rule 8 which requires only that a plaintiff give notice of his claims through a simple, concise, and direct statement. Fed.R.Civ.P. 8. "Generally, a Complaint is considered sufficient when it sets forth the time, place, particular contents of the false representation, the identity of the party making the misrepresentation, and the consequences of the misrepresentations." *In re Doppelt*, 57 B.R. 124, 127 (Bankr.N.D.Ill. 1986), *citing Rudolph v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 100 F.R.D. 807, 809 (N.D.Ill.1984).

---

**3.** Rule 9(b) states in relevant part as follows: In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Fed.R.Civ.P. 9(b).

In the present case, the Bank has sufficiently set forth the substance of the Debtor's alleged fraud to survive a motion to dismiss. The Bank has alleged that the Debtor defrauded the Bank by utilizing the funds obtained from the Bank for Timekeeper Antiques, Inc. as though they were his own personal funds. The Bank contends, *inter alia:* (1) the Debtor used a portion of these funds to purchase a 1979 Chevrolet Corvette; (2) during the period between November 6, 1987 and May 4, 1988, the Debtor took a personal loan of $10,000.00; (3) after the note became due on September 27, 1989, the Debtor began transferring assets to fraudulently hinder the Bank, namely by transferring his interest in real estate to Carole A. Leigh; (4) the Debtor allowed a judgment by confession to be entered in favor of Carole A. Leigh and against Timekeeper Antiques, Inc. in the sum of $145,310.39 in LaSalle County, Illinois; (5) the Debtor gave the Bank, as partial security for the note, the original title for the 1979 Chevrolet Corvette, and without the Bank's knowledge or consent, applied for and receive a duplicate title for the vehicle; (6) the Debtor then transferred title to the vehicle to a third party and utilized those funds for personal purposes; (7) the Debtor and Carole A. Leigh commenced a divorce action to further defraud the Bank in order to facilitate the transfer of certain assets held by the Debtor and Carole A. Leigh; (8) in furtherance of the scheme to defraud, Carole A. Leigh purchased real property in St. Joseph, Michigan; and (9) the Debtor and Carole A. Leigh purchased a new home in Illinois. The Bank maintains that all of these actions taken by the Debtor and Carole A. Leigh were for an extension or renewal of credit obtained by false representations and pretenses, as well as by actual fraud. There are sufficient facts alleged by the Bank to meet the requirements of both Rules 8 and 9.

The Debtor argues in his motion for summary judgment that pursuant to *In re Iaquinta,* 95 B.R. 576 (Bankr.N.D.Ill.1989), the timing of the fraud is critical. The Debtor maintains that ensuing conduct contrary to a former representation by a debtor does not establishes that the original representation was false. *Id.* at 578. *Iaquinta* noted that in order to recover under section 523(a)(2)(A), the creditor must prove that the debtor's fraud "existed and occurred at the time the refinancing took place." *Id.*

The allegations contained in the complaint at bar assert that the Debtor executed the promissory note on March 31, 1989. The Bank further maintains that the Debtor represented to the Bank that the renewal of the loans was solely for the use and benefit of Timekeeper Antique, Inc. The Bank claims, however, that the Debtor's intent was to utilize the funds for his personal use. The Bank further asserts a course of conduct the Debtor took prior to the execution of the note, which was subsequent to the date it became due and payable. The issue is not whether the Bank would prevail, but rather whether it has sufficiently pleaded a cause of action to entitle it to offer evidence. Viewing the allegations contained in the complaint in a light most favorable to the Bank, the Court finds that the Bank has sufficiently pleaded a cause of action under section 523(a)(2)(A).

### H. *Whether the Bank is Entitled to a Trial By Jury*

The Bank made a jury demand in its complaint. The Seventh Circuit has held that bankruptcy courts lack statutory authority to conduct jury trials. *In re Grabill Corp.,* 976 F.2d 1126 (7th Cir.1992). The bankruptcy court can decide, however, the issue of whether the Bank's request for a jury trial should be granted, even though it may not conduct a jury trial. Pursuant to *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), courts are to consider two factors in determining whether a litigant has a right to a jury trial: (1) whether the action brought would have been an action at law or in equity at common law; and (2) whether the remedy sought is legal or equitable in nature. *Id.* at 42, 109 S.Ct. at 2790; *see also Martino v. Weisman,* 155 B.R. 189, 191 (Bankr.N.D.Ill. 1993). The second factor, the remedy sought, carries more weight. *Granfinanciera,* 492 U.S. at 42, 109 S.Ct. at 2790.

Under this analysis, the Bank does not have a right to a jury trial on Count I of

the complaint in this adversary proceeding. The Seventh Circuit addressed the issue of whether a debtor was entitled to a jury trial in a dischargeability adversary proceeding in *In re Hallahan*, 936 F.2d 1496 (7th Cir.1991). The court stated:

> [A]pplication of the two-part test set forth in *Granfinanciera* reveals that a dischargeability proceeding is a type of equitable claim for which a party cannot obtain a jury trial.... The relief sought is also equitable since the essence of a dischargeability claim is a declaration that the debt is indeed dischargeable or non-dischargeable.

*Id.*, at 1505 (citations omitted); *see also In re Perry*, 111 B.R. 861 (Bankr.C.D.Cal.1990) (creditor who filed a proceeding to determine the non-dischargeability of a debt does not have a statutory basis or constitutional right to a trial by jury).

The Bank disagrees with the *Hallahan* rationale and urges the Court to hold that a creditor, who has not filed a proof of claim, but who has filed an adversary proceeding to determine non-dischargeability on the basis of fraud, should be entitled to a trial by jury at least on the issue of damages. Further, the Bank contends that a creditor who has not filed a proof of claim, but brings an adversary proceeding in the bankruptcy court to determine non-dischargeability, cannot be said to have "voluntarily submitted" its case to the bankruptcy court.[4] The Court agrees with and is bound by the *Hallahan* decision and will accordingly follow same. Additionally, the Court agrees with the *Perry* holding.

Even though the Bank, not the Debtor, is the party asserting a right to trial by jury, the *Hallahan* rationale applies. A dischargeability determination is an equitable proceeding regardless of whether same is filed by a debtor or a creditor. As such, under the *Granfinanciera* analysis, the Bank does not have a right to trial by jury on Count I of the complaint in this adversary proceeding.

Additionally, the Court holds that the Bank does not have a right to a trial by jury on Count II of the complaint which seeks relief under the Illinois Uniform Fraudulent Transfer Act. Pursuant to his Count, the Bank seeks to have the alleged transfers of assets to parties other than the Debtor voided or attached to the extent necessary to satisfy the Bank's claim. Also, the Bank seeks to have the Debtor and other parties enjoined from disposing of or transferring assets until the Bank's judgment is satisfied. Under the *Granfinanciera* analysis, this relief requested would have been brought as an action in equity. The nature of the relief sought, voiding or attaching assets and enjoining parties from disposing of or transferring assets, is equitable in nature.

Moreover, even if the Bank had a right to a jury trial under *Granfinanciera*, that right was waived because the Bank submitted to the equitable jurisdiction of the Court. *See Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990); *Granfinanciera*, 492 U.S. 33, 109 S.Ct. 2782; *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). In *Langenkamp*, the Supreme Court reiterated a rule set forth in *Katchen* and reaffirmed in *Granfinanciera* that a creditor who files a claim against the bankruptcy estate has submitted to the equitable claims resolution process in the bankruptcy court, and therefore has waived any right to a jury trial involving that claim. *Langenkamp*, 498 U.S. at 44–45, 111 S.Ct. at 331; *Granfinanciera*, 492 U.S. at 58–59, 109 S.Ct. at 2798–2799; *Katchen*, 382 U.S. at 336, 86 S.Ct. at 476. The logic of these three Supreme Court cases leads to the conclusion that the Bank voluntarily participated in the bankruptcy case and thus consented to have its rights against the estate and the estate's rights against it resolved by the bankruptcy court in proceedings in equity without jury trial rights. *See Martino v. Weisman*, 155 B.R. at 193 n. 7. Thus, the Bank's request for a jury trial is properly stricken.

---

4. In dicta, *Hallahan* further stated: "[e]ven if we were to assume that the dischargeability action was legal in nature, however, [the Debtor] can-

not claim a right to jury trial because, as a Chapter 7 debtor, he voluntarily submitted his case to bankruptcy court." 936 F.2d at 1505.

## V. CONCLUSION

It is somewhat ironic that the doctrines of collateral estoppel, res judicata and merger, which the Debtor invoked, cannot be applied to defeat this adversary proceeding. Notwithstanding this fact, the Debtor's motion for summary judgment is allowed because the Bank has not rebutted the facts asserted by the Debtor in his Rule 12(m) statement and his affidavit. Accordingly, the Bank's failure to counter this evidence and file its requisite Rule 12(n) statement deems admitted the Debtor's Rule 12(m) statement. The Debtor's Rule 12(m) statement coupled with his affidavit negates certain elements of the Bank's causes of action, thereby warranting summary judgment in favor of the Debtor. Thus, for the foregoing reasons, the Court hereby grants the motion for summary judgment and strikes the jury demand.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

## MEMORANDUM OPINION ON MOTION TO ALTER OR VACATE JUDGMENT

This matter comes before the Court on the motion of Union National Bank of Marseilles (the "Bank") pursuant to Federal Rule of Bankruptcy Procedure 9023 to alter a judgment entered by the Court on November 1, 1993 or, in the alternative, to vacate the judgment and grant the Bank time to depose the Debtor, or to allow both the Bank and the Debtor to submit supplemental materials. For the reasons set forth herein, the Court hereby denies the motion.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), (H) and (O).

## II. FACTS AND BACKGROUND

All of the relevant facts and background are contained in the Court's earlier Opinion which is the subject matter of the instant motion. *See Union National Bank of Marseilles v. Leigh*, No. 92 A 1300, slip op. (Bankr.N.D.Ill. Nov. 1, 1993). On November 1, 1993, the Court, in a Memorandum Opinion and Order, granted the Debtor's motion for summary judgment and struck the Bank's demand for a jury trial.[1] In granting summary judgment, the Court held that the Bank failed to prove that a judgment debt owed by the Debtor to the Bank was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). The Bank failed to file its local General Rule 12(n) statement in response to the Debtor's local General Rule 12(m) statement. As a result of the Bank's fatal omission, the Court deemed admitted all material facts contained in the Debtor's Rule 12(m) statement. Thus, the summary judgment motion was granted in part due to the Bank's failure to file its requisite Rule 12(n) statement. The Clerk's Office ministerially entered an order closing this adversary proceeding on November 16, 1993, which is vacated for purposes of this Opinion.

In the instant motion, the Bank seeks to alter the judgment or, in the alternative, to vacate the judgment and grant the Bank time to depose the Debtor, or to allow both the Bank and the Debtor to submit supplemental Rule 12 statements, affidavits and other supporting materials. The Debtor, in a response to the motion, contends that the Bank's arguments should have been raised in its response to the summary judgment motion. The Debtor argues that the Bank is now estopped from raising these argument. In addition, the Debtor invokes Federal Rule of Bankruptcy Procedure 9011. He maintains that the pleadings filed in this adversary proceeding are not well-grounded in fact, and thus violate Bankruptcy Rule 9011. The Debtor seeks undisclosed attorney's fees and costs incurred during the course of this adversary proceeding.

## III. APPLICABLE STANDARDS

The Seventh Circuit Court of Appeals has instructed courts to treat all sub-

---

1. The Bank does not take issue with the portion of the Opinion striking the jury demand.

stantive post-judgment motions, regardless of their captions, if filed within ten days of judgment, under Federal Rule of Civil Procedure 59. *U.S. v. Deutsch,* 981 F.2d 299, 301 (7th Cir.1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin,* 957 F.2d 515, 517 (7th Cir.1992), *cert. denied,* 113 S.Ct. 91 (1992); *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986). Motions made thereafter are considered under the provisions of Rule 60 of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 9024. Because the motion to amend the judgment was served on November 8, 1993, within ten days of the entry of the judgment, the procedural standards and authorities construing Rules 59 and 9023 control rather than the authorities under Rules 60 and 9024.

■ Motions made under Rule 59 serve to correct manifest errors of law or fact, or to consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656 (N.D.Ill. 1982), *aff'd,* 736 F.2d 388 (7th Cir.1984); *F/H Industries, Inc. v. National Union Fire Ins. Co.,* 116 F.R.D. 224, 226 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986); *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill.1976); *In re BNT Terminals, Inc.,* 125 B.R. 963, 976–977 (Bankr. N.D.Ill.1990). The purpose of a motion to alter or amend "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals* 125 B.R. at 977. "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

## IV. *DISCUSSION*

The Bank's first argument is that the Debtor's Rule 12(m) statement was "fatally deficient" and thus the Court should not have considered that statement in its determination of the summary judgment motion. The Bank maintains that the Rule 12(m) statement was deficient in the following ways: (1) it failed to set forth any facts to support venue or jurisdiction; (2) it failed to include any specific references to the record, affidavits or supporting materials; and (3) it contained numerous statements which were neither material nor factual, but were mere conclusions. The Court notes that this is the first time the Bank takes issue with the adequacy or sufficiency of the Debtor's Rule 12(m) statement.

■ The Bank's complaint expressly invoked this Court's jurisdiction and venue which were not disputed by the Debtor in his answer. Such omissions from the Debtor's Rule 12(m) statement are not fatal thereto because neither the jurisdiction of the Court nor the proper venue of this matter have ever been in dispute. The Bank did not raise the instant arguments when it would have been must appropriate to do so—in its response to the summary judgment motion. The Debtor maintains that any alleged deficiencies in the Rule 12(m) statement should have been raised during the summary judgment motion, not at the Rule 59 stage. The Debtor thus concludes that the Bank is estopped from raising this issue. The Court finds that the Bank has waived any arguments it may have had with respect to the sufficiency of the Rule 12(m) statement. These points could have and should have been raised before the entry of summary judgment. The Bank gets no second "bite at the apple" by now raising issues that could have and should have been raised prior to the entry of summary judgment. *See BNT Terminals,* 125 B.R. at 977.

■ The Bank also argues that the Debtor's affidavit contained conclusory, contradictory, or inadmissible statements and should not have been considered by the Court. The Seventh Circuit has stated that where a party fails to move to strike a defective affidavit or particular portions thereof, the party has waived any objections based on its defects, and the Court may consider the affidavit. *Friedel v. Madison,* 832 F.2d 965, 971 n. 4 (7th Cir.1987), *citing Federal Deposit Ins.*

*Corp. v. Meyer,* 781 F.2d 1260, 1267 (7th Cir.1986); *Klingman v. National Indem. Co.,* 317 F.2d 850, 854 (7th Cir.1963). The Court finds that the Bank has waived any objections it may have had to the Debtor's affidavit, the *only* sworn evidence proffered at the time the motion for summary judgment was decided. Thus, no weighing of any conflicting evidence occurred in rendering the summary judgment.

Even if the Bank had not waived these objections, the Court finds that the affidavit was sufficient for purposes of Rule 56(e). Pursuant to Rule 56(e), "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Affidavits submitted in conjunction with summary judgment proceedings must generally comply with the rules of evidence. *Prudential Ins. Co. v. Curt Bullock Builders, Inc.,* 626 F.Supp. 159, 164 (N.D.Ill.1985). In applying these rules, however, courts must not lose touch with a basic principle: to view the evidence strictly against the movant and favorably toward the party opposing the motion. *Id.* The goal remains the determination of whether a material issue of fact exists. *Id.* A court is allowed to disregard inadmissible argument or conclusion in an affidavit. *Id.* When admissible facts and inadmissible statements occur in the same affidavit, a court need not strike the entire affidavit, but rather may rely on the facts and disregard the rest. *Id.*

The Debtor's affidavit did not contain solely inadmissible conclusory statements, all of which should have been disregarded. The affidavit contained admissible ultimate facts, and hence was properly considered by the Court. The Debtor had first hand personal knowledge of his dealings with the Bank and was competent to attest to the facts contained in his affidavit. An affiant's denial that he acted fraudulently or wrongfully acted does not necessarily constitute conclusory statements. Under Federal Rule of Evidence 701, a lay witness can render an opinion. *See Bohannon v. Pegelow,* 652 F.2d 729, 732 (7th Cir.1981). Federal Rule of Evidence 704(a) allows that opinion testimony even if it regards an ultimate issue to be decided by the trier of fact. Opinion testimony that would be admissible at trial may be submitted in an affidavit. *Case & Co., Inc. v. Board of Trade,* 523 F.2d 355, 361 (7th Cir. 1975). Thus, the Debtor's verified statements with respect to whether he acted fraudulently or with wrongful intent are not inadmissible or conclusory statements which should have been disregarded by the Court. His opinion, although conclusory, is certainly biased, but not inadmissible. It was the only affidavit furnished with the summary judgment papers.

The Bank has invoked Federal Rule of Civil Procedure 56(f) as authority for the Court to vacate the judgment to allow the Bank additional time to depose the Debtor and submit a counter affidavit to the Debtor's affidavit. The Bank argues that if the Court finds the affidavit of the Debtor sufficient, summary judgment should be denied as the Bank was unable to prepare a counter affidavit. Alternatively, the Bank seeks time to depose the Debtor or to submit supplemental Rule 12 statements and affidavits.

The Bank has attached to its motion the affidavit of Douglas Drenk, counsel for the Bank. Drenk's affidavit states that it is impossible for him to prepare a counter affidavit to rebut the affidavit of the Debtor because the facts pertain to the Debtor's and his wife's mental states, motives and intentions. Drenk further states that the Bank has had no access to factual information relating to either the Debtor's or his wife's mental state, motive or intention. Interestingly, he further recites that "no discovery has been necessary or taken prior to the motion for summary judgment as this case is still in its initial stages." *See* Affidavit of Douglas Drenk, ¶ 9. Finally, Drenk contends that both the Debtor and his wife have refused to participate in discovery in the state court proceedings.

Rule 56(f) states as follows:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's

opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). The Court will not vacate the judgment and allow the Bank additional time to depose the Debtor or to submit a counter affidavit. The Bank had adequate opportunity during the course of the adversary proceeding it filed on September 25, 1992, to depose the Debtor prior to the motion for summary judgment coming under advisement on September 20, 1993. Rule 56(f) does not provide for such relief after judgment has been entered. *See Vachet v. Central Newspapers, Inc.,* 816 F.2d 313, 317 (7th Cir.1987); *Colby v. J.C. Penney Co., Inc.,* 127 F.R.D. 509, 511 (N.D.Ill.1989). Where a party opposing summary judgment timely presents his affidavit under Rule 56(f) stating reasons why he is presently unable to proffer evidentiary affidavits, the party invokes the Court's discretion. 6 J. Moore, *Moore's Federal Practice,* ¶ 56.24 at 56–797 (2d ed. 1988 and 1993 Supp.). If dilatory or lacking in merit, the motion should not be allowed. *See Otto v. Variable Annuity Life Ins. Co.,* 814 F.2d 1127, 1138 (7th Cir.1987), *cert. denied,* 486 U.S. 1026 (1988). "A party who has been dilatory in discovery may not use Rule 56(f) to gain a continuance where he has only made vague assertions that further discovery would develop genuine issues of material fact." *United States v. Bob Stofer Oldsmobile–Cadillac, Inc.,* 766 F.2d 1147, 1153 (7th Cir.1985). When a plaintiff fails to make reasonable efforts to complete discovery, he is not entitled to a continuance under Rule 56(f). *Colby v. J.C. Penney Co., Inc.,* 926 F.2d 645, 648–649 (7th Cir.1991).

■ Rule 56(f) does not provide a basis for vacating a judgment order to allow a counter affidavit to be filed. Drenk's affidavit should have been submitted prior to summary judgment being entered. The Bank has failed to explain why Drenk's affidavit was not filed in response to the affidavit of the Debtor in the summary judgment motion. At best, Drenk's affidavit is too little and too late at this stage of the proceedings. The Court finds the Bank's attempt a dilatory

tactic, not worthy of reward. If the Bank did not have time to do enough discovery to respond to the summary judgment motion, its proper course was to ask for postponement of a determination of the motion, *American Nurses' Asso. v. Illinois,* 783 F.2d 716, 729 (7th Cir.1986), or file an affidavit under Rule 56(f) explaining why it could not present specific facts in response to the motion. The Bank should have complied with Rule 56 and local Rule 12 prior to the entry of judgment.

In addition, the Court finds Drenk's statement that discovery was not necessary prior to the summary judgment motion incredible. This statement is at odds with his other statement that the Debtor and his wife refused to participate in discovery. The Debtor has denied this allegation. The reality is that the Bank failed to initiate its discovery proceedings prior to the entry of summary judgment, and now realizes that was a fatal mistake. The Court will not vacate its judgment and afford the Bank another opportunity to properly respond to a summary judgment motion and initiate discovery that should have taken place well before this stage of the proceedings.

■ Next, the Bank maintains that it was not required to submit a Rule 12(n) statement because the Debtor's Rule 12(m) statement was "deficient." The Bank has cited no authority for its espoused proposition that if a party deems an opponent's Rule 12(m) statement "deficient," that party is not required to submit a Rule 12(n) statement. The Court rejects this argument as disingenuous. Rule 12(n) contains no language obviating the filing required thereunder if the Rule 12(m) statement is deemed "insufficient." Moreover, the Seventh Circuit case law speaking to Rule 12 statements contains no such directive or authorization. The local Rules are not designed nor do they provide for litigants to determine on a case-by-case basis whether or not they should be followed. The Bank is merely trying to circumvent its oversight and failure to file its requisite Rule 12(n) statement by attacking the sufficiency of the Debtor's Rule 12(m) statement. The Debtor's purported deficiencies will not serve

as an excuse for the Bank's failure to comply with Rule 12.

Rule 12 statements assist federal judges in managing more efficiently their "unprecedented caseloads." *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990). Rule 12(n) provides the opportunity for an opponent to contest uncontested facts. *Schulz v. Serfilco,* 965 F.2d 516, 519 (7th Cir.1992). The Court was afforded the discretion to strictly apply Rule 12(n). *See Schulz,* 965 F.2d at 519; *Bell, Boyd & Lloyd,* 896 F.2d at 1103. "Local Rule 12(n) ... clearly enunciates both what a party ... must do and the consequences for failing to do so." *Schulz,* 965 F.2d at 518. The Court, in exercising that discretion, chose to strictly apply Rule 12(n) because of the press of its calendar and the numerous cases and attendant motions on its docket.

The Bank cannot avoid responsibility for its own failures, omissions and oversights. The Bank's attempt to excuse its inadvertence by shifting the focus to the Debtor's purported failures in untenable. The Bank, not the Debtor, has the burden of proof of its underlying claims. The Debtor's unrebutted affidavit negated elements of that burden of proof. The logical conclusion of the Bank's fallacious argument would allow any litigant to circumvent the filing of a Rule 12(n) statement by determining that his opposing party's Rule 12(m) statement was "insufficient." That determination is to be made by courts, not litigants. If the Bank truly believed that the Rule 12(m) statement was insufficient, it should have made that argument in its response to the summary judgment motion.

Even if the Rule 12(m) statement was not "sufficient", in order to protect its claimed cause of action, the Bank was still required to file its requisite Rule 12(n) statement. The Bank is now suggesting that the Court should have engaged in guesswork regarding the Bank's position on the Debtor's Rule 12(m) statement. The Court cannot read minds. Rather, the Court finds facts on evidence submitted and applies the controlling applicable law to arrive at its determination. The Bank should have raised this point prior to the instant motion, and should have filed a Rule 12(n) statement regardless of the

"adequacy" of the Debtor's Rule 12(m) statement. Thus, the Court rejects this argument.

 The Bank further argues that summary judgment was improper because the issue of intent was a dispositive part of the Court's determination. The Bank cites to several cases for the proposition that summary judgment is not proper when questions of intent exist. Where resolution of a dispositive issue requires the Court to determine a party's state of mind, summary judgment is generally inappropriate because much depends on the credibility of the witness and the trier of fact's observance of the demeanor of the witness during direct and cross examination. *In re George's Comet Motorcars, Ltd.,* 100 B.R. 403, 405 (Bankr.N.D.Ill.1989). Where the defendant's motive or state of mind is an essential element of a plaintiff's case, courts must be circumspect in granting summary judgment based solely on the defendant's categorical denial that the requisite mental state existed. *Corrugated Paper Products, Inc. v. Longview Fibre Co.,* 868 F.2d 908, 914 (7th Cir.1989). "Summary judgment is appropriate, however, even when issues of scienter are involved, if in response to a properly supported motion for summary judgment, the non-movant offers no specific facts to show that there is a genuine issue for trial or simply relies on mere allegations or denials." *George's Comet Motorcars,* 100 B.R. at 405, *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *see also Corrugated Paper Products,* 868 F.2d at 914. Summary judgment is not inappropriate where the undisputed facts make the outcome clear. *Alexander v. Erie Ins. Exchange,* 982 F.2d 1153, 1160 (7th Cir.1993). The Court is not obliged to entertain a "metaphysical doubt." *Id., citing Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Although the movant's testimony about the existence of a particular mental state may not be dispositive, the movant is entitled to summary judgment if the burden is on the nonmovant to establish the state of mind and the nonmovant has failed to come forward with even circumstantial evidence from which a jury could reasonably infer the relevant state of

mind." *Corrugated Paper Products,* 868 F.2d at 914; *see also Morgan v. Harris Trust & Sav. Bank,* 867 F.2d 1023, 1026 (7th Cir.1989); *Schwartz v. System Software Assocs., Inc.,* 813 F.Supp. 1364, 1367 (N.D.Ill. 1993).

 The Bank relied on unverified allegations in the complaint that the Debtor possessed a fraudulent intent. The Bank failed to present any evidence based on specific facts to show such intent in contrast to the Debtor's affidavit which denied any such fraudulent intent. The Debtor's verified statement thereby negated essential elements of the Bank's case on which it had the burden of proof. The Bank had the burden of proof under sections 523(a)(2)(A) and 523(a)(6) and the Illinois Uniform Fraudulent Transfer Act to show the Debtor's fraudulent and willful intent. At the time the motion for summary judgment came under advisement, the Bank produced no *evidence* from which the Court could reasonably infer that the Debtor acted fraudulently or wrongfully. A plaintiff may not respond to summary judgment by resting upon his pleadings; he must set forth specific facts showing that there is a genuine issue of fact. *Price v. Rochford,* 947 F.2d 829, 832 (7th Cir.1991). The Bank merely pleaded allegations that the Debtor acted fraudulently, without coming forward with any evidence from which the Court could reasonably infer that the Debtor possessed a fraudulent intent. Hence, the Court finds that it was correct in granting summary judgment in favor of the Debtor.

Finally, the Debtor argues that the Bank has violated Bankruptcy Rule 9011 because the adversary proceeding was not well-grounded in fact when the complaint was filed. The Bank responds that this request is not properly brought before the Court without the filing of a motion and is not germane to the motion to alter the judgment. While the Debtor should have filed a formal motion, this procedural oversight will not preclude the Court from determining the substance of the requested relief in order to circumvent any further satellite litigation arising from this adversary proceeding.

Bankruptcy Rule 9011(a) provides in relevant part:

> Every petition, pleading, motion ... served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Fed.R.Bankr.P. 9011(a).

Bankruptcy Rule 9011 and Federal Rule 11 of Civil Procedure are analogous and the authorities construing Rule 11 are applicable to the case at bar. Rule 9011 rather than Rule 11 (as recently amended effective December 1, 1993) applies in this forum. The current version of Bankruptcy Rule 9011 was not recently amended to be discretionary as were the provisions of Rule 11. The older case law on the former version of Rule 11, however, is still applicable. Drenk, on behalf of the Bank, signed the complaint thereby triggering the potential for Rule 9011 sanctions.

 The Court has jurisdiction to impose sanctions under these Rules. *In re TCI, Ltd.,* 769 F.2d 441, 448 (7th Cir.1985); *In re Memorial Estates, Inc.,* 132 B.R. 19, 22 (N.D.Ill.1991). The primary purpose of both rules is to deter unnecessary filings for the benefit of the judicial system. *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073,

**232**

1077–1080 (7th Cir.1987), *cert. denied,* 485 U.S. 901 (1988). It is well established that "[t]he standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Federation of State Medical Bds.,* 830 F.2d 1429, 1435 (7th Cir.1987); *see Dreis & Krump Mfg. Co. v. International Asso. of Machinists & Aerospace Workers, Dist. No. 8,* 802 F.2d 247, 255 (7th Cir.1986).

The Seventh Circuit has interpreted Rule 11 as creating four criteria:

> The Rule contains several strands. There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact." The attorney filing the complaint or other paper must satisfy all four requirements.

*Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir.1991), *quoting Szabo,* 823 F.2d at 1080.

■ A pleading, motion, or paper is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known to the attorney or the party signing the filing. *Frazier v. Cast,* 771 F.2d 259, 263–265 (7th Cir.1985). A filing or pleading is well-grounded in fact if it has a reasonable basis in fact. *Beverly Gravel, Inc. v. DiDomenico,* 908 F.2d 223 (7th Cir. 1990) (factual pleading error did not rise to level of sanctionable conduct). "A signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 540 (1991).

■ The amount and nature of sanctions to be imposed is left to the discretion of the Court. *Insurance Ben. Admrs., Inc. v. Martin,* 871 F.2d 1354, 1359 (7th Cir.1989); *Frantz v. United States Powerlifting Federa-*

tion, 836 F.2d 1063, 1066 (7th Cir.1987); *Diversified Technologies Corp. v. Jerome Technologies, Inc.,* 118 F.R.D. 445, 453 (N.D.Ill. 1988). The severity of sanctions imposed should be proportionate to the violation, but should not be overly severe. *Brown,* 830 F.2d at 1437. Federal courts possess the inherent power to sanction for bad faith conduct. *Chambers v. NASCO, Inc.,* 111 S.Ct. 2123 (1991).

■ The Court finds that the Bank has not violated Rule 9011 and declines to award sanctions and attorney's fees and costs. The Court finds that the filed complaint was reasonable and based on legal theories warranted by existing law. The Bank facially stated viable causes of action in its complaint. It subsequently failed, however, to support those causes of action in the summary judgment motion with any evidence which it may have had, but failed to furnish in timely opposition. This failure does not constitute sufficient grounds to warrant the imposition of Rule 9011 sanctions. There is no evidence furnished by the Debtor that the complaint was not filed in good faith. Thus, the sanctions requested are denied.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the Bank's motion to alter the judgment entered on November 1, 1993. The Debtor's request for sanctions under Federal Rule of Bankruptcy Procedure is denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.